IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Patricia N., | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) Case No.: 20-cv-50388 ) ) Magistrate Judge Margaret J. Schneider |
| Martin O'Malley, Commissioner of Social Security,[1] | ) ) ) |
|     Defendant. | ) |

**REPORT AND RECOMMENDATION**

It is the Court's Report and Recommendation that, for the reasons set forth below, Plaintiff's motion for summary judgment [19] be denied and the Commissioner's motion for summary judgment [22] be granted. Any objection to this Report and Recommendation must be filed by 01/17/24.

**BACKGROUND**

**A. Procedural History**

On April 18, 2017, Patricia N. ("Plaintiff") filed for disability insurance benefits. R. 13. The Social Security Administration ("Commissioner") initially denied her application on September 22, 2017, and upon reconsideration on January 8, 2018. *Id*. Plaintiff filed a written request for a hearing on January 15, 2018. *Id*. On July 1, 2019, a hearing was held by Administrative Law Judge ("ALJ") Lovert F. Bassett where Plaintiff appeared virtually and testified. Plaintiff was represented by counsel. *Id*. James J. Radke, an impartial vocational expert ("VE"), and Steven S. Goldstein, MD, an impartial medical expert, also appeared and testified. *Id*.

On August 2, 2019, the ALJ issued his written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 13-26. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Now before the Court are Plaintiff's motion for summary judgment [19], the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [22], and Plaintiff's reply brief [25].

---

[1] Martin O'Malley has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

1

**B. The ALJ's Decision**

In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of January 1, 2017. R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, obesity, degenerative joint disease of the bilateral knees, chondromalacia, plantar fasciitis, fibromyalgia, depression, and anxiety. R. 15. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 16.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work but with the following limitations: occasionally climb ramps and stairs, balance, stoop, and kneel; never crouch, crawl, or climb ladders, ropes, or scaffolds; never have exposure to pulmonary irritants like smoke, dust, gases, fumes, particles, and poorly ventilated areas; never have exposure to unprotected heights or dangerous moving machinery; can understand, remember and carry out simple job instructions. R. 19. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 24. Finally, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including sorter (DOT# 521.687-086), order taker (DOT# 209.587-018), and document preparer (DOT# 249.587-018). R. 25. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from January 1, 2017, through the date of decision, August 2, 2019. R. 26.

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citations omitted). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or

deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff contends that the ALJ's decision contains an "[o]bvious conflict at Step 5," an error in the evaluation of Plaintiff's subjective statements, and an error in the weighing of the medical opinion evidence. [19], p. 6-13. Each argument will be taken in turn.

### A. Reasoning Level Conflict at Step 5

Plaintiff argues that the RFC's limitation to "simple" tasks presents an "apparent conflict" with the Level 3 reasoning level required in the jobs of order taker (DOT# 209.587-018) and document preparer (DOT# 249.587-018). [19], p. 6-9. Consequently, Plaintiff asserts that the jobs of order taker and document preparer are unperformable, leaving only sorter (DOT# 521.687-086)[2] available, and further argues that sorter does not have a sufficient number of jobs available to be significant in the national economy. [19], p. 8-9.

The ALJ included the occupations of order taker, document preparer, and sorter based on the testimony of the VE. R. 63. In response to questioning from the ALJ about sedentary unskilled occupations with a "simple" task limitation, the VE testified that the "[f]ollowing jobs are consistent with those restrictions and limitations" and proceeded to list sorter, order taker, and document preparer. *Id*. The ALJ then specifically asked the VE whether there were "any conflict[s]" between the VE's testimony and "the information that's contained in the Dictionary of Occupational Titles [(DOT)], and Selected Characteristics of Occupations." *Id*. The VE affirmed that there were no conflicts, and Plaintiff's counsel did not challenge the VE's testimony at the hearing. *Id*. Accordingly, the ALJ relied on the VE's testimony and included the three occupations in his decision.

An ALJ is "[e]ntitled to rely on unchallenged VE testimony" and must only "[i]nvestigate and resolve" a conflict between the VE's testimony and the DOT if it is "apparent." *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008); *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) (citing *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)). Apparent conflicts must be "[o]bvious enough that the ALJ should have picked up on them without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). That is not the case here. The Seventh Circuit has concluded that "[t]here is no apparent conflict between a simple tasks limitation and level 3 reasoning." *Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) (citing *Sawyer v. Colvin*, 512 F. App'x 603, 610-611 (7th Cir. 2013)); see also *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009)

---

[2] Plaintiff mistakenly identifies "order taker" as the occupation listed at DOT# 521.687-086 with 5,600 jobs in the nation and a reasoning level of 1, but the occupation is actually "sorter." [19], p. 8; *see* R. 25 *and* Dictionary of Occupational Titles, Nut Sorter, https://perma.cc/D3FB-58LQ. Consequently, the Court will proceed with "sorter" as the occupation at issue for Plaintiff's argument regarding the sufficiency of job numbers.

3

(finding that a Reasoning Level 3 occupation with a "simple" limitation did not constitute an apparent conflict).

Nevertheless, Plaintiff challenges this caselaw as outdated based on the VE Handbook, which offers examples of apparent conflicts for VEs to consider and includes as one such example a Reasoning Level 3 job with a "simple" task limitation. [19], p. 7; *see also* Vocational Expert Handbook, Social Security Administration, 39-41, https://perma.cc/9Q2Y-T2TZ (instructing a VE that they "must be alert to apparent conflicts" and advising a VE to be prepared to explain how a claimant can perform a Reasoning Level 3 occupation with a "simple" task limitation). Other courts in the Seventh Circuit have already rejected this argument, finding that the Handbook is neither binding nor a resource with which an ALJ is expected to be familiar. *See Heup v. Comm'r of Soc. Sec. Administration*, No. 19-CV-1256-PP, 2023 WL 3955146, at *4–5 (E.D. Wis. June 11, 2023) ("[T]his argument does not support a finding that there was an obvious, apparent conflict that the ALJ should have identified and resolved without any assistance. The Handbook is a tool for vocational examiners… the Handbook is not a binding legal authority that the ALJ or the court must follow); *Tommie S. v. Kijakazi*, No. 19 C 8249, 2021 WL 5232728, at *5 (N.D. Ill. Nov. 10, 2021) ("[W]hile it is true that the referenced handbook suggests a conflict exists with respect to level 3 reasoning and simple tasks, such internal guidance does not have the force of law. Moreover, courts have found that there is no conflict.").

Plaintiff attempts to distinguish the facts of her case and argues that the conflict was nonetheless apparent because Plaintiff was found to have "[r]eceived special education throughout her education and struggled on several fund [*sic*] of knowledge questions, suggesting a likelihood of an intellectual disability" that should have made the Reasoning Level 3 occupations obviously conflict with the "simple" limitation. [19], p. 7-8 (citing R. 488-89). Plaintiff does not explain why these findings would preclude her from fulfilling the duties listed in the document preparer or order taker occupations, nor does she explain why those duties do not fit within the limitation of understanding, remembering, and carrying out simple job instructions. Instead, what is evident from the record is that Plaintiff did complete at least her tenth grade of high school, she previously fulfilled a semi-skilled role as a home health aide (DOT# 354.377-014) for 17 years that required a Reasoning Level of 3, and the psychologist who evaluated her mental functioning concluded that she is "[c]apable of managing finances should she be awarded benefits," suggesting that Plaintiff does have substantive cognitive capacities notwithstanding a possible intellectual disability. R. 61-62; Dictionary of Occupational Titles, Home Health Aide, https://perma.cc/PB4N-BCCS; R. 488-89. None of this evidence indicates an obvious contradiction with the needs of a Reasoning Level 3 job, which merely requires an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." OALJ Law Library, Dictionary of Occupational Titles Appendix C, https://perma.cc/EEL3-5TNY. As a result, there was no "apparent" conflict present as to Reasoning Level 3 occupations with a "simple" task limitation that required the ALJ's investigation. The Court recommends a finding that the jobs of document preparer and order taker were properly considered. *See Terry v. Astrue*, 580 F.3d at 478 (finding that, where plaintiff did not argue that she could not perform the requirements of a Reasoning Level 3 job, and where plaintiff's educational and occupational background presented no obvious conflict with the requirements, there was no apparent conflict with a Reasoning Level 3 occupation that required the ALJ's investigation).

Accordingly, the Court need not consider Plaintiff's argument that the sorter job has an insignificant number of jobs to be viable on its own. Nevertheless, the Court recommends a finding that the sorter's 5,600 jobs are a significant number of jobs in the national economy because "[i]t appears well-established that even 1,000 jobs is a significant number." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). *See Stanley v. Astrue*, 410 F. App'x 974, 976 (7th Cir. 2011) ("We have held that when a person can perform 1,000 or more jobs, then work exists in "significant" numbers."); *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021) (confirming that 1,000 jobs is a significant number); *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (affirming *Liskowitz* and reasserting that 1,000 jobs is a significant number); *Primm v. Saul*, 789 F. App'x 539, 546 (7th Cir. 2019) (citing *Liskowitz* and affirming that 1,000 jobs is a threshold for a significant number of jobs). Therefore, the Court recommends a finding that the ALJ's decision on this issue be affirmed.

### B. ALJ's Subjective Credibility Finding

Plaintiff also contests the ALJ's credibility finding, arguing that the ALJ "erred in evaluating Nelson's subjective statements." [19], p. 9. An ALJ's credibility finding is given "special deference" and will be overturned only if it is "patently wrong," meaning that it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)) (internal quotations omitted); *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). The ALJ's credibility determination here was explained and supported, and the Court recommends that it not be overturned as patently wrong.

The ALJ clearly grounded his decision as to Plaintiff's credibility in the medical evidence of record. He considered her fibromyalgia, COPD, and knee treatment records, and found that all three conditions were manageable with conservative treatments such as pain medication or physical therapy. *See* R. 20-21 (analyzing R. 402-12; 415, 418, 424, 426, 428, 491-97, 519-27, 538-542, 543-78, 579-84, 585-608, 538, 539, 544, 621-667, 668). Plaintiff argues for the first time in her reply brief that the ALJ insufficiently analyzed the import of her conservative treatments. [25], p. 4-6. This argument is waived. *See Dye v. United States*, 360 F.3d 744, 751, fn. 7 (7th Cir. 2004) ("[Plaintiff] waives his argument… by raising it for the first time in his reply brief."); *Carroll v. Lynch*, 698 F.3d 561, 564, fn. 3 (7th Cir. 2012) (finding argument raised for the first time in reply brief waived); *Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 925 (N.D. Ill. 2015) ("Arguments raised for the first time in reply briefs are ordinarily waived, and rightly so given the lack of opportunity for the other party to respond to them.").

Even considering this argument, the Court recommends a finding that the ALJ appropriately considered the import of Plaintiff's conservative treatment, as the medical records cited by the ALJ repeatedly indicate that conservative treatment was used precisely because it was sufficiently addressing Plaintiff's needs (and not that it was used due to lack of access to more aggressive treatment, for example). *See* R. 402 (October follow-up of knee injection, reporting that "[w]e injected in July with very good pain relief; she reports that the medication is still helping her and she feels improved…"); 416 (follow-up to chest issues post-pneumonia, noting that medications were given at discharge and that "[s]ince discharge on she is improving"); 544 (reviewing Plaintiff's knee issues and finding that "[t]his client exhibits a fair prognosis at time of

discharge from skilled rehabilitative therapy in conjunction with a home exercise program"); 579 (reviewing Plaintiff's right heel pain and reporting that the treater "[r]ecommend[ed] another steroid injection… [r]ecommended patient give her foot some time to improve… [s]urgery is last option"); 586 (discussing knee treatment options with Plaintiff, concluding that Plaintiff "[d]ecided to proceed with bilateral knee steroid injections which she tolerated well"). Based on these records, the ALJ concluded that the "[g]enerally normal physical examinations, well controlled symptoms with conservative treatment, and lack of escalating treatment modalities are not typical of an individual who is disabled." R. 20. In other words, the ALJ analyzed the medical evidence at issue and explained why that evidence supported his determination that, contrary to Plaintiff's assertions, her ailments were not so debilitating as to prevent her from performing basic work activities.

Plaintiff further challenges the ALJ's consideration of her daily activities, arguing that the ALJ placed "undue weight" on her performance of daily activities in evaluating her credibility, in contravention of Seventh Circuit caselaw. [19], p. 11 (*quoting Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)). Although an ALJ may not place "undue weight" on daily activities, an ALJ may still review those activities as "[a]gency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Moss v. Astrue*, 555 F.3d 556 at 562; *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). The ALJ here considered Plaintiff's daily living activities within an appropriate scope; he gave a brief three sentences to her activities, stating that her "[r]eports of daily activities along with medical records support that the claimant is able to perform sedentary work with the additional…limitations." R.22. In contrast to this brief consideration of Plaintiff's daily activities, the ALJ spent two pages evaluating Plaintiff's medical evidence in reaching his conclusion that "[t]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." R. 20; R. 20-22. Accordingly, the ALJ's credibility determination was explained and supported, and the Court recommends that the determination be affirmed because it is not patently wrong.

### C. ALJ's Treatment of Opinion Evidence

Plaintiff also contends that the ALJ erred in his assessment of the medical opinion evidence provided by Dr. Goldstein and Dr. Anton. [19], p. 12-13. The ALJ found the opinion of Dr. Goldstein, the medical expert who testified at Plaintiff's hearing, persuasive and the opinion of Dr. Anton, Plaintiff's treating physician, partially unpersuasive. R. 22-24. As a result, Plaintiff argues that the ALJ erred because the "[k]ey factors a disability adjudicator will consider in evaluating the persuasiveness of an opinion are supportability and consistency, both which indicate affording Dr. Anton greater weight." [19], p. 13.

Plaintiff filed her case after March 17, 2017, and as a result the ALJ "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. § 404.1520c(a)) (internal quotations omitted). Instead, the ALJ is advised to consider a variety of factors in evaluating medical opinions and must "[e]xplain how [he] considered the supportability and consistency factors" in particular. *See* 20 C.F.R. § 404.1520c(b)(2); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023)

6

(affirming that under § 404.1520c(b)(2), an ALJ must consider supportability and consistency of medical opinions). In considering the supportability and consistency of a medical opinion, "[a]n ALJ need only minimally articulate[ ] her reasoning for the persuasiveness of the medical opinion." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)) (internal quotations omitted). The ALJ here minimally articulated his consideration of the supportability and consistency factors and, as such, the Court recommends that his evaluation of the medical opinions be affirmed.

The ALJ explicitly considered both the supportability and consistency of Dr. Goldstein's opinion in deciding to give the opinion persuasive weight. As to supportability, the ALJ found that Dr. Goldstein's recommendations were supported because they were "[c]onsistent with the evidence he reviewed in forming his opinions" and because Dr. Goldstein was able to listen to Plaintiff's testimony at the hearing prior to offering his opinion. R. 22. The ALJ also found Dr. Goldstein to be supported by his status as an expert[3] in disability assessments. *Id*. In terms of consistency, the ALJ found that Dr. Goldstein's opinion was consistent because the RFC limitations he suggested were in accord with the medical history and limitations in Plaintiff's record, such as her inhaler use and leg problems. *Id*. The ALJ also pointed out where he found Dr. Goldstein's opinion unpersuasive due to inconsistency with Plaintiff's limited mobility. *Id*. The ALJ thus met his low burden of "minimally articulating" his consideration of Dr. Goldstein's supportability and consistency.

Similarly, the ALJ found portions of Dr. Anton's opinion unpersuasive because they were inconsistent and unsupported. R. 23. The ALJ explained that the internal inconsistency of Dr. Anton's opinion, and his lack of expertise in assessing disability, left parts of his opinion unsupported. *Id*. In particular, the ALJ pointed out that although Dr. Anton "[o]pined that the claimant's emotional factors do not contribute to the severity of her symptoms and functional limitations," he also found that Plaintiff is "[i]ncapable of performing high stress work," demonstrating an internal inconsistency in his opinion. R. 24. Further, the ALJ found that other parts of Dr. Anton's opinion were inconsistent with the medical evidence itself; the ALJ specifically explained that Dr. Anton's movement limitations were "[o]verly restrictive and inconsistent with the records demonstrating improvement in the claimant's pain and gait with injections and physical therapy." *Id.* As a result, the ALJ plainly met the requirement of minimal articulation when considering the supportability and consistency of Dr. Anton's opinion. The

---

[3] Plaintiff presents a limited argument, raised for the first time in her reply brief, as to the propriety of the ALJ's reliance on Dr. Goldstein's status as an expert in disability assessments. [25], p. 7. Because "[p]erfunctory and undeveloped arguments… are waived," the Court need not consider the Plaintiff's single-sentence challenge to the ALJ's consideration of Dr. Goldstein's expertise. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Nevertheless, the Court notes that under the Social Security Regulations, whether a medical source has familiarity with the "[d]isability program's policies and evidentiary requirements" is a relevant factor in the weighing of that source's opinion. *See* 20 C.F.R. § 404.1520c(c)(5). The ALJ's consideration of each doctor's expertise in relation to social security policy is thus not inherently problematic. *See Anders v. Saul*, 860 F. App'x 428, 433 (7th Cir. 2021) ("[I]t was appropriate for the ALJ to look favorably on Dr. Pardo's and Dr. Madala's opinions on the basis that they are highly qualified and experts in Social Security disability evaluation.") (internal quotations omitted); *Rodolfo M. v. Kijakazi*, No. 21 C 5565, 2023 WL 264913, at *7 (N.D. Ill. Jan. 18, 2023) (recognizing that an ALJ can consider the social security expertise of a particular physician when evaluating their opinion in accordance with the regulations).

Court thus recommends a finding that the ALJ's weighing of Dr. Goldstein and Dr. Anton's opinion evidence was proper and should be affirmed.

## CONCLUSION

For the reasons stated above, it is the Court's Report and Recommendation that Plaintiff's motion for summary judgment [19] be denied and the Commissioner's motion for summary judgment [22] be granted. Any objection to this Report and Recommendation must be filed by 01/17/24. *See* Fed. R. Civ. Pro. 72(b).

Date: 01/03/2024               ENTER:


                                              _____
                                              United States Magistrate Judge